No. 15-3029

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ALFRED CLEVELAND, | ) | **FILED** |
|  | ) | Feb 24, 2016 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | O R D E R |
|  | ) |  |
| MARGARET BRADSHAW, Warden, | ) |  |
|  | ) |  |
| Respondent-Appellee. | ) |  |
|  | ) |  |

Alfred Cleveland, an Ohio prisoner represented by counsel, seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 petition.

Cleveland was convicted by a jury of murder and was sentenced to life in prison, with the possibility of parole after twenty years. *See Cleveland v. Bradshaw*, 693 F.3d 626, 627, 629 (6th Cir. 2012). In Cleveland's prior appeal, we described the facts underlying his conviction as follows: Cleveland's conviction for the murder of Marsha Blakely was based in part on the testimony of William Avery, Jr., who had told police that he saw Cleveland, Lenworth Edwards, Benson Davis, and John Edwards assault Blakely at Floyd Epps's apartment on the night of August 7, 1991. Avery told police that Cleveland told him later that night that he and his co-defendants "knocked . . . off" Blakely after Avery left Epps's apartment. Avery provided this information at the urging of his father, William Avery, Sr. (Sr.), who was a police informant. In return, Avery was paid a reward. When the state refused to pay Avery an additional $10,000 to testify at Lenworth Edwards's trial, Avery refused to testify. The state then put him in jail for contempt. Avery subsequently testified at trial, under oath, that he had lied about witnessing acts involving Blakely. As a result, the case ended in a mistrial and Avery was imprisoned for perjury. While Avery was in prison, he withdrew his recantation. Avery then described the incident differently, telling the prosecutor that he did not leave after Blakely's assault and that he instead went with Blakely and the four others to the back of a shopping plaza, where he saw a

fifth man, named "Justice," assault Blakely. Cleveland and his co-defendants were then tried for the offense. At Cleveland's trial, Avery testified that he left during this second assault. Avery also testified that he had recanted his testimony at Lenworth Edwards's first trial because Edwards had threatened him while he was in jail for the contempt charge. Additionally, he admitted that he had lied to police at least twice about the events occurring on the night of the incident. Cleveland maintained his innocence, presenting testimony from several witnesses that he was in New York during the week in which the offense occurred and evidence from his probation officer that he was in New York on the morning after the incident. *Id.* at 628-29. The Ohio Court of Appeals affirmed. *State v. Cleveland*, No. 96CA006357, 1997 WL 104653 (Ohio Ct. App. Mar. 5, 1997). The Ohio Supreme Court denied Cleveland leave to appeal. *State v. Cleveland*, 686 N.E.2d 274 (Ohio 1997) (table); *State v. Cleveland*, 680 N.E.2d 1021 (Ohio 1997) (table). Cleveland's subsequent attempts to obtain state postconviction relief were denied.

In 2004, unbeknownst to Cleveland, Avery told Federal Bureau of Investigation (FBI) agent William Beachum that he had lied during Cleveland's trial, that Sr. had committed the murders, and that Sr. had pressured him to come forward so that Sr. could collect the reward money and hide his own guilt. In 2006, after searching for Avery for several years, Cleveland's family convinced Avery to meet with Cleveland's attorney and a private investigator. In a telephone conversation before the meeting, Avery admitted that he had lied at Cleveland's trial. At a meeting several days later, Avery signed an affidavit recanting his trial testimony. He stated in the affidavit that, during Edwards's trial, he told the prosecutor that his earlier statements about witnessing the murder were false, but the prosecutor said, "[I]f these dudes don't go down for this, that [Avery] would." *Cleveland*, 693 F.3d at 630. Avery then provided a sworn statement in the presence of a court reporter. He explained that he was recanting because "he had quit using drugs, had a full-time job, and was trying 'to get [his] life straight with God.'" *Id.* He also said that his mother had told him to come forward and tell the truth. He did not repeat his earlier statement to the FBI that Sr. had committed the murder. *Id.*

In 2006, Cleveland again sought state postconviction relief and moved for a new trial. During a 2008 state-court evidentiary hearing, Avery invoked his Fifth Amendment right not to testify after he was told that he could receive a sentence of twenty to thirty years of imprisonment for perjury. Avery told a reporter after the hearing, "Dude's innocent . . . but I don't feel I have to go to jail for 30 years." *Id.* The trial court denied the postconviction motion. The Ohio Court of Appeals affirmed, and the Ohio Supreme Court dismissed the appeal.

In 2010, Cleveland, represented by counsel, filed a § 2254 petition in which he argued that (1) he was actually innocent, as demonstrated by Avery's subsequent recantation of his testimony against Cleveland; (2) his due process rights were violated when the state presented allegedly false testimony; (3) the state violated his due process rights when it failed to disclose several pieces of favorable evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (4) his due process right to a fair trial was violated because the state prosecutor had engaged in misconduct; and (5) trial and appellate counsel provided ineffective assistance. The district court dismissed the petition as untimely.

On appeal, we determined that Avery's recantation of his testimony against Cleveland was credible, and thus Cleveland had alleged a claim of actual innocence that was sufficient to overcome the limitations bar. Accordingly, we vacated the district court's judgment and remanded the case to the district court for further proceedings. *Cleveland*, 693 F.3d at 633-42. On remand, Cleveland, represented by counsel, filed an amended § 2254 petition elaborating on his claims. After a hearing, the district court determined that Cleveland's claims lacked merit, denied the § 2254 petition, and denied Cleveland a COA. Cleveland timely appealed.

Through counsel, Cleveland now moves this court for a COA. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**Actual Innocence**

Cleveland argues that Avery's recantation of his testimony against Cleveland establishes his actual innocence. The Supreme Court has never held that "a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). Reasonable jurists thus could not debate the district court's conclusion that a freestanding claim of actual innocence is not cognizable in a non-capital habeas case.

***Brady* Claim**

Cleveland argues for the first time on appeal that the prosecution violated *Brady* by failing to disclose the results of a prison investigation into Avery's assertion that he recanted his testimony against Lenworth Edwards only because he was threatened by Edwards while he was in prison. Because Cleveland did not raise this specific *Brady* claim in his amended complaint, in his traverse, or at the evidentiary hearing, this court will not consider this issue raised for the first time on appeal. *See Bowling v. Parker*, 344 F.3d 487, 510 n.7 (6th Cir. 2003); *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir. 1987).

**Ineffective Assistance of Trial Counsel**

Cleveland argues that trial counsel was ineffective for failing to investigate and discover potential alibi witness David Donaphin. He contends that Donaphin could have testified that Cleveland was in New York between 10:00 p.m. and 12:00 a.m. on the night of August 7-8, 1991.

To establish ineffective assistance of counsel, the defendant must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

In determining that Cleveland had raised a credible claim of actual innocence, we disagreed with the district court's determination that Donaphin's affidavit stating that he had been with Cleveland on the night of the offense was unreliable. *Cleveland*, 693 F.3d at 640-41. On remand, the district determined that counsel was not ineffective for failing to locate Donaphin or call him as a witness because Cleveland had not provided counsel with Donaphin's last name or a specific time frame for the alibi. Additionally, the district court questioned Donaphin's credibility, determining that Cleveland considered Donaphin to be a friend, that Donaphin and Cleveland called each other frequently, and that Donaphin could not remember the names of anyone else who was allegedly with Cleveland on the night of the alibi. In his COA application, Cleveland challenges the district court's determination.

At the post-remand evidentiary hearing, Cleveland testified that, at the time of trial, he did not remember what day he had seen Donaphin while he was in New York. He also conceded that he did not know Donaphin's real name at that time and instead thought that his name was David Green. Because counsel presented several other alibi witnesses regarding Cleveland's trip to New York, did not know Donaphin's name, and did not know that Donaphin would testify that he saw Cleveland in New York on the night of the offense, rather than sometime during the week surrounding the offense, counsel was not ineffective for reasonably limiting the scope of his investigation and failing to locate Donaphin. Furthermore, although Donaphin testified at a deposition taken after this court's remand that he remembered that he was with Cleveland and

others on the particular night in question because it was his birthday, he could not remember who else was with him, nor could he remember what he had done on any of his other birthdays in the years before and after the incident. Therefore, the reliability of Donaphin's testimony was questionable. In light of the foregoing, Cleveland has not shown that reasonable jurists could debate the district court's determination regarding this ineffective-assistance-of-counsel issue.

**False Testimony**

Cleveland argues that his right to due process was violated because the prosecution knew or should have known that Avery's trial testimony was false.

The trial court considered Avery's truthfulness when it considered Cleveland's motion for a new trial or for leave to file a delayed motion for a new trial. Cleveland had sought a new trial for several reasons, including new evidence of an affidavit and "deposition" by Avery in which Avery recanted his trial testimony against Cleveland. The trial court denied the motion, determining that Avery's recantation was not credible because he refused to corroborate his statements at a hearing and instead asserted his Fifth Amendment right against self-incrimination. The Ohio Court of Appeals determined that the trial court did not abuse its discretion in reaching this conclusion, noting that the trial court had found Avery's trial testimony to be credible, that the trial court was properly suspicious of the "deposition" (at which Avery merely talked to an investigator in the presence of a court reporter and was not subject to cross-examination), and that there were inconsistencies among Avery's recantations and with testimony by police at trial.

However, in reviewing the district court's initial determination that Cleveland's habeas petition was time-barred, we determined that Avery's affidavit recanting his testimony was reliable and provided Cleveland with a credible claim of actual innocence. *Cleveland*, 693 F.3d at 638-42. On remand, at the evidentiary hearing, the parties further explored Avery's testimony and recantations. In denying Cleveland relief on this issue, the district court determined that Avery was not lying at Cleveland's trial.

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972). "The same holds true 'when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.'" *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir. 2010) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To demonstrate a denial of due process concerning the prosecution's elicitation of perjured testimony, a defendant must show that the testimony was false and material and that the prosecution knew that the testimony was false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

Regardless of whether Avery's trial testimony was truthful, Cleveland has not demonstrated that the prosecution knew or even should have known that Avery was lying. Avery changed his story multiple times, and courts have disagreed over which version of the story was untruthful. Cleveland has provided no evidence that the prosecution knew that Avery's testimony was false at the time of the trial. Although Cleveland asserted that he told the prosecutor during Edwards's trial that his earlier statements about witnessing the murder were false, and the prosecutor said, "[I]f these dudes don't go down for this, that [Avery] would," *Cleveland*, 693 F.3d at 630, this statement does not demonstrate that the prosecution knew that Avery's testimony at Cleveland's trial was false. In light of the foregoing, reasonable jurists would not debate the district court's determination regarding this issue.

Cleveland does not raise the remaining arguments that he raised in his § 2254 petition. Accordingly, he has abandoned those arguments. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

In light of the foregoing, Cleveland's application for a COA is **DENIED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk